(No. 13412.—Decree affirmed.)

WILLIAM R. LINN *et al.* Appellants, *vs.* EDWIN M. CLARK
*et al.* Appellees.

*Opinion filed October 23, 1920—Rehearing denied Dec. 10, 1920.*

1. PARTNERSHIP—*each partner should conduct business of firm for benefit of all.* It is the duty of every partner to conduct the business of the partnership for the common benefit of all the partners and use his best skill, care and judgment solely in their interest, and as agent for the partnership a partner may buy or sell partnership property, but he cannot use it, or his relation to it, for his personal gain.

2. PRINCIPAL AND AGENT—*agent for sale of land cannot agree with purchaser for a joint interest without principal's consent.* An agent for the sale of land is prohibited from having any interest, directly or indirectly, in the sale without the consent of his principal, given with full knowledge of every fact known to the agent which might affect the principal's interest; and the principal may rescind the sale and reclaim his land where the purchaser, knowing that he deals with an agent, buys ostensibly for himself but secretly for the joint benefit of himself and the agent.

3. SAME—*agent for sale of land may make agreement for joint interest with purchaser after deal is closed.* An agent for the sale of land is at liberty to deal with a purchaser for a joint interest in the property after the sale has been completed and no duty to the principal remains to be performed.

4. EVIDENCE—*when former bill of complainant may be introduced in evidence against him.* Parties to causes are presumed to know the contents of the pleadings filed by them, and where a complainant has begun a suit by the filing of a bill by his solicitor and is afterwards made a defendant when the court allows intervening petitioners to become complainants, the bill filed by the original complainant is admissible in evidence against him although it is not signed by him, but its effect as evidence must be determined from the circumstances under which it was drawn by the solicitor.

5. SAME—*application of rule that parol evidence is not admissible to vary terms of written instrument.* The rule that parol contemporaneous evidence is not admissible to contradict or vary the terms of a written instrument applies only to the engagement of the parties and the extent and manner of their undertaking, and does not exclude evidence of the circumstances of the execution of the contract, and of facts in connection with it which may tend to explain its meaning, by showing the situation of the parties and

all their relations to one another and the subject matter of the contract.

6. SAME—*parol evidence is admissible to explain recital of a fact in a written contract—partners.* Where one of the members of a partnership in a land venture acts as agent in the sale of land belonging to one of the members of the firm and subsequently enters into an agreement with the purchaser to help him handle the property as an investment for a share in the profits, a recital in their agreement that the property was bought for their "joint benefit and account" is not conclusive of the illegality of the agent's transactions, but the parties may show by parol evidence that the agreement was made after and independently of the sale.

CARTER, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

BAYLEY & WEBSTER, (GEORGE P. MERRICK, of counsel,) for appellants.

JAMES J. BARBOUR, and EDWARD H. S. MARTIN, for appellee Edwin M. Clark.

ROBERT L. LYONS, and EDMUND S. CUMMINGS, for appellee James B. Muir.

Mr. JUSTICE DUNN delivered the opinion of the court:

William R. Linn, Charles L. Raymond and Edwin M. Clark were partners in a trading venture in a tract of land in the city of Chicago situated at the corner of Sheridan road and Devon avenue and extending to Lake Michigan. They bought the land on July 2, 1900. It was conveyed to Linn, who paid the purchase price, $45,000, and a written agreement was executed by the three on that date providing for the subdivision and improvement of the property; that Raymond should furnish the money required from time to time for the payment of taxes and assessments and for the improvement of the property; that Clark was to give his attention and services to the subdividing, improving and

selling of the property, without compensation other than his share of the proceeds of the sale as provided in the agreement, and that the proceeds which should be realized from sales of the property were to be applied first to the repayment to Linn and Raymond, respectively, of the sums which they had advanced, with interest, and the remainder should be divided equally among the three partners. The property was all sold in the course of time, each of the partners receiving about $20,000 of profits. In November, 1904, James B. Muir, who was a lawyer and had then been practicing his profession in the city of Chicago about thirty years, entered into negotiations with Clark for the purchase of a part of the tract. He was well acquainted with Clark, having gone to school with him in their boyhood in Michigan and Clark having occupied part of Muir's office for a time. Muir was acquainted with the property and its ownership by the partners. After some negotiations a written contract was entered into between Linn and Muir by which Linn agreed to sell the property to Muir for $12,000, of which $1000 was paid in cash, $5000 was to be paid January 3, 1905, and the remainder of $6000 on or before three years from the date of the contract. On January 3, 1905, Muir paid the entire purchase price by giving his check for $12,000 to Clark, who thereupon surrendered the unpaid check which Muir had given for the $1000 cash payment. Linn executed a deed to Muir for the premises, which were then vacant. Since that time the property has been managed and controlled by Muir, buildings have been erected on it by tenants without expense to the owner, the cost to Muir, together with interest and all expenses, has been repaid to Muir out of the income, and it is now producing from $8000 to $10,000 a year rent and is worth $200,000.

On January 5, 1905, Muir went to Michigan on account of the death of his mother and did not return to Chicago until January 15, when Clark called at his office and the following instrument was executed by them:

"It is hereby agreed by and between James B. Muir and Edwin M. Clark, both of the city of Chicago, that whereas on January 4, 1905, James B. Muir bought and took title in his name to all that part of lot nine (9) in Cape Hayes subdivision of the southeast fractional quarter (¼) of section thirty-two (32), township forty-one (41), north, range fourteen (14), east of the third principal meridian, which lies west of the Chicago, Milwaukee and St. Paul Railroad Company, in Chicago, Cook county, Illinois, and paid for the above described property the sum of twelve thousand dollars ($12,000).

"It is understood between the parties hereto that said above described property was bought for the joint benefit and account of James B. Muir and Edwin M. Clark, and that after the said James B. Muir receives all moneys advanced by him for the purchase of said property, together with taxes on same and interest at six per cent per annum, the net profits from the sale of said property shall be divided equally between the parties hereto.

JAMES B. MUIR,
EDWIN M. CLARK."

On March 21, 1919, Clark filed a bill in chancery against Muir in the superior court of Cook county, averring that the purchase from Linn was made for the joint account and mutual benefit of Clark and Muir, claiming that Muir should be regarded as a trustee of one-half of the premises for the benefit of Clark, and praying that Muir be required to convey the undivided one-half of the premises to Clark or that they be sold, that an account be taken of the rents and profits, and for general relief. In the bill it was alleged that it was understood and agreed between Muir and Clark that Clark would take such steps and actions in relation to the property that it could be bought, held and finally disposed of so as to yield a large and substantial profit, and that such understanding and agreement were reduced to writing, as has been set forth.

Muir filed an answer, denying that the purchase was made on joint account or that the declaration of trust was a part of the purchase, and averring that the memorandum made on or about January 15, 1905, was entirely independent of the purchase of the premises and was executed by

the defendant at the request of the complainant without any consideration. Muir also informed Linn and Raymond of Clark's action in filing a bill and his claim, this being the first intimation to Linn and Raymond that Clark had or claimed any interest in the premises under the sale to Muir. Thereupon Linn and Raymond filed a petition in the cause to be made parties defendant. The court denied the petition but gave them leave to become parties complainant, and thereupon, on August 8, 1919, they filed a bill of complaint in the original cause of Clark *vs.* Muir, in which they alleged the purchase by Muir and averred that it was for the joint account of himself and Clark; that Muir had knowledge of Linn and Raymond's interest and of Clark's relation to them. They offered to re-pay Muir's advances, and prayed for an accounting, for a reconveyance of the premises and for general relief. Clark answered this bill on November 28, 1919, denying, contrary to his original bill, that he had any interest in the sale to Muir at the time. He admits that Muir knew of the contract between Linn, Raymond and Clark, but avers that his contract with Muir was entered into after the sale to Muir; that Clark was not a lawyer and believed that his relations with Muir were so intimate and friendly that no question of the interpretation of the contract would ever arise between them; that he therefore gave no special thought to the terms of the memorandum which he prepared evidencing the agreement, and that by the statement that the property was bought for their joint benefit he did not intend to state the exact facts but to impose a status between Muir and himself whereby his rights and liabilities in the ownership of the property and the profits would be the same as though the premises had been actually bought by Muir for their joint benefit and account. He says that he left Chicago for Pasadena, California, on December 21, 1918, and did not return until November 14, 1919; that during much of that time he was in ill-health; that his attention was not directed to the de-

tails of the sale by Linn to Muir until notified, subsequent to May 6, 1919, by Linn and Raymond that they claimed an interest in the Muir property; that he promised his counsel, from time to time, to return to Chicago and give his counsel his best recollection as to all facts concerning the transaction but was unable to do so until the present time.

On December 6, 1919, Clark amended his original bill in accordance with his answer, omitting the allegations that Muir purchased the premises on the suggestion and advice of Clark for their joint account and mutual benefit, and that it was mutually understood and agreed between them that Clark would take such steps and actions in relation to the property that the same could be bought, held and finally disposed of so as to yield a large and substantial profit for the mutual benefit of himself and Muir, and that their agreement was reduced to writing and embraced in the memorandum set forth in the original bill of complaint. On the contrary, he avers that Muir purchased the property and subsequent to January 3, 1905, entered into negotiations with Clark with reference to their entering into an agreement concerning the property, and that the memorandum of agreement was afterward executed by them. Muir answered the bill of Linn and Raymond, denying that his purchase was made on the suggestion and advice of Clark, for their joint account and mutual benefit, on the previous understanding between them that Clark would take such steps and actions in relation to the improvement of the property that it could be bought, held and disposed of at a large and substantial profit; denying that the memorandum set forth in the bill of complaint was made and executed in pursuance of such mutual understanding and agreement, and stating that prior to the execution of the memorandum there was no agreement, understanding or arrangement of any kind between Clark and Muir with reference to the property; that Clark did not suggest the purchase of the property and it was not bought for the joint account

and mutual benefit of Clark and Muir, but Muir purchased the premises of his own independent volition and judgment. The cause was brought on for hearing upon the bill of Linn and Raymond and the sworn answers of Muir and Clark, (the oath of the defendants not having been waived by the bill,) and the testimony of Linn and Raymond, who knew nothing of the relations between Clark and Muir at the time of Muir's purchase. Muir also testified as a witness on the hearing, and the court entered a decree dismissing the bill for want of equity, from which the complainants have perfected an appeal.

The complainants' claim is based upon the principle that partners, whether in a single venture or general partners, sustain a relation of trust to one another which precludes any one of them having or acquiring any interest in the partnership property or business adverse to another. It is the duty of every partner to conduct the business of the partnership for the common benefit of all the partners and use his best skill, care and judgment solely in their interest. As agent for the partnership a partner may buy or sell partnership property, but he cannot use it, or his relation to it, for his personal gain. An agent for the sale of property is prohibited from having any interest, direct or indirect, in the sale without the consent of his principal, with full knowledge of every fact known to the agent which might affect the principal's interest; and if a purchaser, knowing of the relation, enters into an agreement with an agent to buy land of the principal, ostensibly for himself but secretly for the joint benefit of himself and the agent, the principal, upon learning the facts, may rescind the sale and reclaim his land. This liability does not, however, continue after the termination of the agency. When the sale has been completed no duty to the principal remains to be performed, and the agent is at liberty to deal with a purchaser of the property without reference to his former agency. (*Tyler* v. *Sanborn*, 128 Ill. 136; *Glover* v. *Lay-*

*ton,* 145 id. 92.) These principles apply to the dealings of the parties and to the facts in this case.

The issue of fact raised by the pleadings is whether Muir purchased, by agreement with Clark, for their joint account. Clark and Muir in their sworn answers both say that he did not, and that there was no understanding or agreement that Clark should have any interest in the land until after the delivery of the deed. They are the only persons who have personal knowledge of the fact, and their answers would not leave the question open for argument were it not for the fact that they both signed the written memorandum that "it is understood between the parties hereto that said above described property was bought for the joint benefit and account of James B. Muir and Edwin M. Clark." Clark, also, when he filed his original bill stated distinctly that Muir purchased the premises for the joint account and mutual benefit of both himself and Clark, with the understanding and agreement on the part of Clark that he would take such steps and actions in relation to and affecting the property that the same could be bought, held and finally disposed of so as to yield a large and substantial profit for their mutual benefit. It also appears that Muir left Chicago two days after receiving his deed, and upon his return Clark came to Muir's office with a written agreement which Clark had already prepared, and it was there executed by Muir and Clark with only the insertion by Clark of the words "in Chicago, Cook county, Illinois," in the description of the property, and by Muir of the single word "net" before "profits." Clark and Muir disagree as to the conversation which took place at the time, Clark stating in his answer that Muir, after the execution of the conveyance, expressed misgivings as to whether or not he would be able to make a profit and as to whether he had not paid too much for the property; that Clark offered to assist Muir in managing and selling the property and handling it in the same manner as he had handled it for Linn and Raymond but upon

the basis of half the profits and liability, and Muir expressed himself as desirous of having Clark's help and co-operation in handling the property. Muir's testimony was that Clark came to Muir's office after the latter's return to Chicago and asked him if Clark sold the property right away and made Muir a good thing would Muir give him half the profits, and that Muir, after a little consideration, agreed to the proposition. He said that Clark thereupon produced an unsigned contract or agreement in duplicate which he submitted to Muir and they both signed. The defendants objected to the admission of Clark's original bill in evidence. It was not signed by Clark. The statement in his answer in regard to it has been already given. In addition he stated that since returning to Chicago he had read a copy of Muir's answer and that it is true as stated in that answer, that "in truth and in fact said memorandum was executed on or about the 15th day of January, 1905, and was executed entirely independent and in no way connected with the purchase of said premises by this defendant and the execution and delivery of the deed thereof to this defendant."

The defendants objected to the admission of the original bill in evidence. The bill was not signed by Clark and there is no evidence that he saw it or was acquainted in detail with its allegations before it was filed, but it was filed by his solicitor, presumably after consultation with him, and parties to causes are presumed to know the contents of the pleadings filed by them. The bill was admissible in evidence, and its effect as evidence must be determined from the circumstances under which it was made. It was filed three months after Clark had left for California, and it is not an unreasonable inference that it was prepared by his solicitor in his absence, in reliance as well upon the memorandum of agreement between Muir and Clark as on the solicitor's recollection of his client's statements. The memorandum and the bill are absolutely inconsistent with Clark's position on the issue of fact now in review, and if the case

depended upon his evidence, alone, that issue would have to be found against him. Muir's answer, however, raises the same issue and his evidence must also be taken into consideration. His answer is uncontradicted in any way except by his own statement contained in the memorandum of the agreement with Clark. That statement is inconsistent with his answer. While the memorandum and the circumstances of the time and manner of its execution and the different accounts given of that transaction by Clark and Muir raise some suspicion of an earlier understanding between Clark and Muir, they are not sufficient to overcome Muir's sworn answer, which must be taken as true, so far as responsive to the bill, unless disproved.

Appellants contend that Muir and Clark are bound by the statement in the memorandum of their agreement which they signed, and that no evidence can be heard to show that the property was not bought for their joint benefit. The rule in regard to the exclusion of parol evidence to affect a written instrument and the reasons for the rule are stated by Greenleaf in section 275, as follows: "When parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagements, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing, and all oral testimony of a previous *colloquium* between the parties or of conversation or declarations at the time when it was completed or afterwards,—as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties,—is rejected. In other words, as the rule is now more briefly expressed, 'Parol contemporaneous evidence is inadmissible to contradict or vary the extent of a valid written instrument.'" The rule applies only to the engagement of the parties and the extent and manner of their undertaking. It does not

exclude evidence of the circumstances of the execution of the contract and of facts in connection with it which may tend to explain its meaning by showing the situation of the parties and all their relations to one another and the subject matter of the contract. As said by the author already quoted (sec. 277): "It is to be observed that the rule is directed only against the admission of any other evidence of the *language* employed by the parties in making the contract than that which is furnished by the writing itself. The writing, it is true, may be read by the light of surrounding circumstances in order more perfectly to understand the intent and meaning of the parties, but as they have constituted the writing to be the only outward and visible expression of their meaning, *no other words* are to be added to it or substituted in its stead." Again, in section 285 it is said: "Neither is this rule infringed by the introduction of parol evidence *contradicting* or *explaining* the instrument in some of its *recitals of facts,* where such recitals do not, on other principles, estop the party to deny them, and, accordingly, in some cases such evidence is received." A number of illustrations are given in this section of the application of the doctrine as announced.

The object of the undated memorandum was to declare the interests of the parties to it in the subject matter, which was the land described. It was an agreement for the equal division of the net profits. Though the language of agreement was used in stating that it was understood that the purchase was on joint account, yet this was but the statement of a past event,—a fact which could not be affected by an agreement that it did or did not exist. The parties might agree to treat it as being true or not true and as governing their agreement if it was of a character to affect their agreement, and they might estop themselves by their action from denying it, but it was essentially the mere recital of a fact, the contradicting or explaining of which did not affect the meaning of the contract. The facts stated

were evidence in favor of the appellants of the illegality of the original purchase, so far as they were concerned. It did not in any manner affect the undertaking of Muir or Clark to one another. The meaning of the language of the contract is not affected by the recital of this fact. Perhaps it may have explained the reason for making the memorandum or shown the consideration for doing so. We express no opinion as to that, but the meaning of the contract is essentially the same whether these words are in or out of the writing, and it was competent for the parties to show the truth in regard to the purchase.

The decree of the superior court is in accordance with the evidence, and it is affirmed.　　　*Decree affirmed.*

Mr. JUSTICE CARTER, dissenting.